# THE LAW OFFICE OF JEFF CHABROWE

*261 Madison Avenue, 12th Floor New York, NY 10016 | Tel. 917.529.3921 | F 212.736.3910*

June 11, 2020
via ECF

Hon. Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      **Re:** ***United States v. Leroux*; 12-cr-489; 14-cr-75 (RA)**

Dear Judge Abrams,

    We respectfully submit the enclosed letter on behalf of Mr. Leroux. Mr. Leroux wanted to address the Court in his own words prior to sentencing-while his thoughts were gathered, and his emotions settled.

    Thank you for your time and consideration.

Respectfully,

*Jeffrey Chabrowe*

Jeff Chabrowe, Esq.
*Counsel for Paul Calder Leroux*
cell 917-529-3921
email jeff@chabrowe.com

encl.

Dear Hon. Judge Abrams,

Your Honor I would like to take this opportunity to explain myself in my own words.

I was born December 24th 1972, in a war torn country then known as Rhodesia, now called Zimbabwe, I was born in the middle of what was essentially a major race war between the countries minority white led government and the majority black population. During the war which lasted until 1980 I saw many atrocities, including executions, torture, and the displacement of people, including my family. I also saw serious injuries to many people including other children, and my best friend lost a leg to a land mine. It was hard for me to receive any education, I received minimal education in this period.

In 1984 I was relocated by my family to South Africa for our own safety, in South Africa I received additional education. I do not have the equivalent of a GED however I did finish what amounts to the local equivalent of high school in a technical college. I dedicated myself to studies and studied in the field of computer programming, and electronic integrated circuit design ("chip design"), after graduation from that school I fled South Africa to Europe, otherwise I would have been forced to join the local army to fight for a minority white government if I had stayed in South Africa, a repeat of what I had seen in Rhodesia, and something I did not agree with.

In Europe I struggled to find work as I lack proper documentation, and I have very limited schooling. I was able to find work as a computer programmer and I worked in the UK, Australia, and throughout Asia. Through years of study on my own I have a strong ability in the field of technology, and therefore I worked in the UK as a contract programmer for GCHQ, the UK equivalent of the NSA, and at GCHQ I assisted law enforcement in creating tools, such as biometric, and disk encryption products to help UK police and field agents secure their files and computers.

In approximately 2004 I started a criminal U.S online pharmacy business Rx Limited, and that is what brought me to the attention of federal agents. I moved to the Philippines and opened businesses with the intention that those businesses serve the online pharmacy. In the Philippines I paid bribes, and in many cases I received benefits for those bribes, in other cases I was extorted, the PSR recognizes this see PSR ¶57; during incidents where I was extorted I believed that there would be serious consequences if I did not pay, including arrest, jail, or death. I accept responsibility that paying bribes was wrong in every situation.

I have no excuse regarding my criminal acts in this case, and I apologize for this behavior. I would like to take this opportunity to explain some of the background to this case. I testified in case 13CR00521 Tr 740:1-25 that fraudulent cases were created against me (essentially to extort me), after one of those cases (that involved a fabricated story that I had assaulted a maid); I received a package at my office in the Philippines containing a bullet and a letter from a local terrorist group known as the NPA. The NPA letter was from the NPA's Rizal command (a location close to Manila where I lived); the letter stated that a people's court had been held, and I had been found guilty of crimes against the Filipino people (the maid in the fraudulent assault case), the letter went on to state I had been sentenced to death, and I would be executed by the NPA. According to the U.S travel advisory for the Philippines dated 9/30/2019 it states "Terrorist and armed groups continue plotting possible kidnappings, bombings, and other attacks in the Philippines". The risks are real, and I feared for my life, and my families lives. The NPA have killed many thousands of people in the Philippines. I started to become increasingly paranoid, anxious, and depressed. I rarely left my home. I regrettably got myself involved in violence.

My state of mind at various times was unstable, and paranoid. I testified I believed Dave Smith planned to kidnap, and kill me, in addition to me believing he stole money, see testimony at 13CR00521 Tr 408:6. The violence in this case was wrong, and I am sorry for this. I accept full responsibility for my actions. I have blood on my hands. I have cooperated not only with the U.S government, but through my lawyers I have also cooperated with the Philippines government in relation to all of my criminal conduct.

In the Philippines, it has been made clear that I will be charged with murder on my arrival there by NBI agent Rizaldy J. Rivera, National Bureau of Investigation. This agent conducted a parallel investigation in the Philippines into some of the subject matter in case 13CR00521. This agent subsequently appeared on a TV documentary, aired in Asia called Channel News Asia ("CNA"), on or about October 2019. In that documentary agent Rivera stated I would be charged with murders if arrested in Manila, Philippines, and he also stated he has substantial evidence against me (evidence, including physical evidence, ultimately provided to him largely or entirely as a consequence of my proffers and meetings with federal agents).

My lawyers have been informed by the Philippines Department of Justice ("DOJ") that I will in fact be extradited, an outstanding arrest warrant exists for me issued 2010, that warrant was renewed 2020 in advance of my expected extradition to the Philippines. My Filipino lawyer has agreed that I will: (1) not contest extradition from the USA, (2) not contest the weapons trafficking charge, (3) not contest superseding charges for murder on my arrival in the Philippines, and (4) pay restitution in the Philippines to my victim's families. I has been a fugitive from Philippines justice since 2010, the Philippines case involves the weapons trafficking conduct see PSR ¶35 - ¶39 that conduct is also under consideration by this Court as part of my relevant conduct. Your Honor I want all this to end, I want to face what I have done in the Philippines; I do not want my family in danger any more. I face a mandatory minimum of 8 years in prison in the Philippines, and a maximum of 12 years in prison, one of my codefendants has already received an 8 year sentence in that case.

My plans for the future If I am released by this Court, and by the court in the Philippines is as follows: I plan to start a business selling and hosting Bitcoin miners. Bitcoin is a new type of digital currency, the currency lacks a central issuer, and is instead created through the process of generating strings of computer generated numbers ("coins") by a distributed network of computers, this is a process known as ("mining"); this mining process is normally undertaken by specially designed computers based on integrated circuits ("chips") especially designed for this application ("ASIC chips"). I have a custom design for an ASIC chip that utilizes special optimizations in the underlying computer code or algorithm known as ("SHA"), I obtained this knowledge about the mathematical properties of SHA, while working as a contract programmer at GCHQ in London in the early 2000's. These optimizations have allowed me to create an ASIC chip design, and therefore ASIC miners, that are an order of magnitude faster at Bitcoin mining than any current design, to this end I plan to put my knowledge and skills to a better, and legal use. If released, I also look forward to the chance to reunite with my family members in the Philippines even though I will be in prison there. I have not seen any of them, or my children since 2012. I have had no visits from them, and I have been in pretrial detention for nearly 8 years.

Respectfully submitted,

*Roux*

Paul Le Roux